*777
 
 HAWTHORNE, Justice.
 

 Roosevelt Hughes, a Negro, aged 39, was charged in a bill of indictment with the crime of aggravated rape denounced by Article 42 of the Louisiana Criminal Code, tried, found guilty, and sentenced to death. From this conviction and sentence he has appealed.
 

 At about 3 :00 o’clock on the morning of October 17, 1961, an intruder entered the house in New Orleans where the prosecuting witness, a 19-year-old white girl, lived with her parents, a sister, and a younger brother. Upon gaining entrance to the house the intruder awoke the young brother of the prosecuting witness and forced him to lead the way to his sister’s room. When they reached the room where the girl was sleeping, the intruder forced the boy to lie on her bed next to the wall. He pulled a cloth tightly around the neck of the girl, informed her that if she made any noise he would kill her, and then raped her. The brother slipped from the room and awoke his father, who rushed into the girl’s room, turned on the light, and saw a Negro man. The father, having taken up a butcher knife from the kitchen, scuffled with the rapist and cut him twice in the back. The intruder then fled from the scene.
 

 The accused, Roosevelt Hughes, was arrested in an apartment later in the morning; and on that same morning was examined by an assistant coroner, whose examination disclosed two knife wounds in his back but no other apparent injuries. Pictures of the accused were taken about this same time. Shortly after his arrest the accused madé an oral statement admitting the crime and also a written confession. Moreover, certain wearing apparel which he admitted belonged to him was found by the police at the scene of the crime. He was identified by the prosecuting witness and her father and her brother.
 

 For reversal appellant relies on nine bills of exception.
 

 Bills of Exception Nos. 1 and 2.
 

 Bill No. 1 was reserved when the assistant coroner was permitted to testify about his findings from a physical examination made of the accused on the morning of the arrest.
 
 [1]
 
 The objection is to the effect that there had been no showing that the accused had voluntarily submitted to the examination, that it is possible he had been forced to submit to the examination, all without the benefit of counsel, and that this deprived him of a fair trial and denied him due process of law guaranteed by the Four
 
 *779
 
 teenth Amendment of the Constitution of the United States.
 

 Bill No. 2 was taken to the overruling of counsel’s objection to the admission in evidence of certain photographs taken of the accused.
 
 [2]
 
 Counsel’s objection is that to admit these photographs in evidence, taken while the accused was in custody of the police and without benefit of counsel, was a violation of the right of the accused to a fair trial and to due process of law.
 

 We do not think that permitting the coroner to testify as to his findings upon the physical examination made of the accused or the admission in evidence of pictures of the accused denied him due process of law simply because the examination was made and the pictures were taken while he was in custody of the police and without counsel. We know of no provision of the law which requires the consent of the person arrested and charged with a crime for these things to be done. Neither the testimony of the coroner nor the admission in evidence of the pictures violated defendant’s constitutional privilege against compulsory self-incrimination. 1 Underhill’s Criminal Evidence (5th ed. 1956), p. 239, sec. 126; State v. Roy, 220 La. 1017, 58 So.2d 323; State v. Robinson, 221 La. 19, 58 So.2d 408. Counsel does not say that the admission of the testimony and of the pictures was contrary to any rule of evidence or violated any statute or law of this state, and we do not think the facts and circumstances show that any constitutional right of the accused was violated.
 

 Bills of Exception Nos.
 
 3,
 
 4, and 5.
 

 These bills were taken
 
 to the
 
 admission in evidence over defendant’s objection of an oral statement or confession and a written confession made by him. According to the bills of exception the basis of the objection is that these confessions were not freely and voluntarily given. The bills also disclose that he objected to the written confession on the ground that he could not read and write. In brief filed in this court his counsel further contends that these confessions were inadmissible because they were given before the accused obtained counsel and while he was in the custody of the police; that admitting them under these circumstances denied him due process of law.
 

 Between 10:0l) and 11:00 a. m. on October 17, a few hours after the rape occurred, the accused was taken into custody at an
 
 *781
 
 apartment on Washington Avenue by three police officers. At that time he was asked whether he was the one who had raped the girl on Louisiana Avenue, and he replied that he was. This is the oral admission or statement which he contends was not freely and voluntarily given. All three officers who were present at the time of the arrest testified that this admission or statement was made freely and voluntarily and without inducement or promise, and that the accused was not beaten or mistreated in any way. The accused contends that he was beaten by these officers, but his testimony is unsupported. The trial judge refused to accept the accused’s statement as true, and with this finding wc are in full accord. It is significant that at about 12:15 p. m. on this same day the accused was examined by a physician, the assistant coroner, who reported that he was in good physical condition with no marks of violence on his body except the lacerations in his back (the knife wounds inflicted by the father of the girl raped). The accused made no complaint to the assistant coroner of any mistreatment by the police at the time of his arrest.
 

 The accused admits that the written confession, taken on the typewriter in the detective bureau office between 3:45 and 4:25 p. m. on the same day, was read to him, and that he signed it of his own accord. He does not contend that he was mistreated in any way and made to sign this statement. Although he says he could not read or write, he admits that he could sign his name. All the officers who were present at the taking of this confession testified that it was freely and voluntarily given, that after being typed it was read back to the accused, and that he signed it of his own accord without any inducements, promises, or threats.
 

 The Constitution of this state, Article 1, Section 11, provides that “No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made”. The Code of Criminal Procedure, R.S. 15:451, provides that before a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.
 

 Although the accused in the instant case says he was mistreated at the time of his arrest, all of the officers testified that these confessions were made freely and voluntarily. The conclusion of the trial judge on the conflict of the testimony involves only a question of fact and should not be disturbed unless it is not supported by the evidence. State v. Terrell, 175 La. 758, 781, 144 So. 488 (citing State v. Por
 
 *783
 
 teau, 52 La.Ann. 476, 26 So. 993; State v. Woods, 124 La. 738, 50 So. 671; State v. Bourgeois, 158 La. 713, 719, 104 So. 627, 629; State v. Mitchell, 168 La. 454, 122 So. 579); State v. Bueche, 243 La. 160, 142 So.2d 381, 384. We conclude that the trial judge properly weighed the evidence, that it supports his finding that the confessions were freely and voluntarily given, and that the statutory and constitutional provisions were not violated.
 

 Defense counsel has woven into each objection to the admissibility of evidence in Bills Nos. 1 through 5 the fact that the evidence was obtained before the accused had benefit of counsel. We have no law excluding, and the Due Process clause of the Fourteenth Amendment of the federal Constitution has not been extended to exclude, confessions, photographs, or the results of physical examinations made before the defendant has counsel.
 

 Bill of Exception No. 6.
 

 Bill No. 6 was reserved to the admission in evidence of a report of the lunacy commission appointed by the court to determine the sanity of the accused. Counsel objected to this report on the ground that two members of the commission had examined the defendant on only two occasions of about 45 minutes each. He argues in brief that the examination was inadequate and “was merely a sham to give semblance of compliance with the requisites of due process of law * * * ”.
 

 No
 
 contention is made that the members of the lunacy commission were not competent or qualified. Counsel’s objection is aimed at the alleged inadequacy of the examination of the accused made by two of them. Whether the examination was adequate in no way affects the admissibility of the report, and objection on this ground could go only to the weight to be given to the report and not to its admissibility in evidence. Furthermore, the admission of the report in evidence, which was admitted in connection with the testimony of a member of the lunacy commission, did not deprive the accused of the right to adduce evidence in rebuttal, the burden being on him to establish, if he could, by a preponderance of the evidence that he was insane at the time of the commission of the crime.
 

 Article 269 of the Code of Criminal Procedure provides for the appointment of experts to determine the mental condition of an accused. As pointed out by this court in a recent decision, there is nothing in this statute that dictates the method to be employed by the experts in conducting their examination, for the lawmakers evidently realized that such experts are “eminently better qualified to know just exactly how to best carry out their duty in this respect as the particular facts of each case may warrant”. State v. Faciane, 233 La. 1028, 1047,
 
 *785
 
 99 So.2d 333; State v. Augustine, 241 La. 761, 767, 131 So.2d 56, cert. den. 368 U.S. 922, 82 S.Ct. 246, 7 L.Ed.2d 137.
 

 Bills of Exception Nos. 7, 8, and 9.
 

 These bills were reserved when the trial judge sustained the State’s objections to questions asked by counsel for the accused of a judge of the Criminal District Court for the Parish of Orleans, the clerk of that court, and a newspaper columnist. According to these bills counsel for the defendant was attempting to elicit testimony from the judge and the clerk to determine whether in the Parish of Orleans any white man had been tried and convicted of the crime of rape of a Negro female, and to elicit testimony from the columnist to determine whether a white man was ever tried, convicted, and sentenced to the electric chair in the State of Louisiana for the crime of rape of a person designated as a Negro female.
 

 The trial judge was correct in sustaining the objections. Defendant’s purpose was to show that the Louisiana rape statute was directed primarily, and now solely, against Negroes, and that white males are never charged with, convicted of, and sentenced to death for, the crime of rape in New Orleans and Louisiana, and that thus the State of Louisiana and the Parish of Orleans have denied defendant the equal protection of the law within the provision of the Fourteenth Amendment. Defendant’s real purpose was to prove the discriminatory administration of our statute so as to make it unconstitutional, and he cites Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, as supporting him.
 

 Since it is not the jury’s function to determine the constitutionality of our statute, the evidence sought to be elicited from the witnesses was irrelevant to the jury’s function and therefore inadmissible. Defendant does not contend, nor is it shown, that he at any time objected to the charge laid in the indictment or made to the court any attack on the statute under which he was charged, tried, and convicted. The question of whether a statute is unconstitutional, or is being unfairly administered by public officials so as to discriminate between persons of different races in similar circumstances, is not for the jury, but is for the judge when properly and timely raised.
 

 The conviction and sentence are affirmed.
 

 [1]
 

 . The bill mentions an assistant coroner’s report of this examination marked “State Exhibit 8”. The report was marked “SS” for identification, but it was not filed or admitted in evidence. However, the assistant coroner did testify that he made a physical examination of the accused, and told what that examination showed.
 

 [2]
 

 . In the bill counsel identifies these photographs as State Exhibits 7 and 8. There are no photographs in the record bearing these identification numbers. However, counsel attached to this bill the testimony of the assistant coroner, and the only photographs of the accused regarding which this witness testified are State Exhibits 1, 2, and -3. S-l is merely a photograph of the accused, and S-2 and S-3 are pictures of his back showing the knife wounds.