254 So.2d 444

STATE of Louisiana

v.

Larry MORRIS.

No. 51083.

Nov. 8, 1971.

Martin C. Schroeder, Jr., John L. Glover, Baton Rouge, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Donald L. Beckner, Asst. Dist. Atty., for plaintiff-appellee.

SUMMERS, Justice.

Appellant Larry Morris was charged by bill of information with attempted armed robbery. La.Crim.Code arts. 27 and 64. After trial by jury, Morris was convicted and sentenced to hard labor for fifteen years. On this appeal he relies upon nine bills of exceptions reserved at the trial.

### Bill No. 1

■ On the day set for the trial of the case, the State's attorney made an oral motion to continue the case because of the absence of a state witness. Counsel for Morris then objected that the motion must be "by written motion alleging specifically the grounds upon which it is based" as required by Article 707 of the Code of Criminal Procedure.

At this point the trial judge observed that, in the absence of a written motion, there was nothing before him requiring a ruling. However, he decided that he would recess court until the next morning at ten o'clock. Defense counsel objected and reserved a bill of exceptions.

He argues in support of his objection that the action of the trial court was in fact a ruling granting an oral motion for a continuance. Article 709 of the Code of Criminal Procedure is also cited in support of the proposition that a motion for continuance based upon the absence of a witness must state the facts to which the absent witness is expected to testify, that the witness will be available and that diligence was used to procure the attendance of the witness. Finally, defense counsel argues that the continuance deprived him of a speedy trial guaranteed by the Sixth and Fourteenth Amendments of the Constitution.

None of these arguments are meritorious. Principally it is to be noted that the bill of exception is aimed at the improper granting of an oral motion for a continuance, whereas the record discloses that the judge granted a recess—not a continuance. Under these circumstances we think the proper procedure available to defendant is suggested in the comments to Article 708 of the Code of Criminal Procedure:

A recess that has prejudicial results because it is too long, or that is granted at a stage of the trial or under circumstances that are prejudicial, can be remedied by procedural devices. The defendant can move for a mistrial on the ground that the recess is prejudicial, or when the state makes an effort to recommence at

the end of the recess, the defendant can object on the ground of double jeopardy.

On this basis it is correct to hold that the defense did not avail itself of the proper remedy under the circumstances. Perhaps, as defense counsel argues, the judge's action was not strictly speaking a recess, for the trial had not commenced. La.Code Crim. Proc. art. 761. And a recess is "a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced." La.Code Crim.Proc. art. 708. Despite these contentions, which are in truth a play on semantics, the trial judge is vested with inherent authority in the conduct of his court to grant this adjournment.

■ Moreover, we agree with the trial judge that in the absence of any showing to that effect the delay involved by the adjournment was not of sufficient duration to warrant the charge that defendant was deprived of a speedy trial. In this regard, the law does not exact extraordinary effort, diligence or exertion from the courts, or the representatives of the State. A reasonable delay not involving an abuse of the trial judge's discretion will not support a charge that a speedy trial has been denied. La. Const. art. 1, § 9; La.Code Crim.Proc. art. 701; State v. Frith, 194 La. 508, 194 So. 1 (1940).

### Bills Nos. 4, 5 and 11

During the trial counsel for the defense moved that defendant, a Negro, be permitted to sit outside the rail with the spectators in anticipation that a State witness would be called upon to identify him. When this motion was denied the defense moved that several Negroes of defendant's approximate age and configuration be seated alongside defendant to make the identification more realistic. · The contention being that knowledge of courtroom procedure was so widespread any witness called to identify defendant would necessarily point to him, because he was a Negro seated at defense counsel's table alongside his white lawyer. Subsequently, the defense moved for a mistrial on the ground that the State's sequestered witness, Chapman, violated the court's instructions, Chapman being the victim of the attempted robbery for which defendant was being tried.

■ The State's attorney points to our disposition of an application for supervisory writs in State v. McGee, 255 La. 234, 230 So.2d 89 (1970), as establishing a prohibition against seating the accused in the spectator section of the courtroom. This is not necessarily the result intended by that case. It is possible, under certain circumstances not existing here, that the trial judge might permit the accused, at his own request, to be seated in the spectator section of the courtroom. Cf. State v. Ashworth, 167 La. 1085, 120 So. 865 (1929). However, generally speaking, such a procedure is impermissible for the reason that it may furnish a basis to contend that the accused was

not present at all important stages of the trial as Articles 831–836 of the Code of Criminal Procedure require. Such a procedure would also tend to impair the decorum of the trial so essential to an attitude of deliberation, impartiality and fairness.

■ An in-court identification satisfies the requirements of due process if, judged by the totality of circumstances, the identification procedure is not unnecessarily suggestive and conducive to irreparable mistaken identification—so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. State v. Junius, 257 La. 331, 242 So.2d 533 (1971). Here no special, extraordinary procedure was resorted to in preparation for the in-court identification. The procedure, so far as the record discloses, was the traditional procedure for trials in such cases. There is no evidence in the record that the State was responsible in any way for any "unnecessarily suggestive" procedure. In truth, we have not been apprised of the fact that the defendant was actually identified at the trial by a State witness as the perpetrator of the crime charged.

■■ Just as the State may not resort to impermissibly suggestive procedures for in-court identification of a defendant during trial, defense counsel may not avail himself of procedures designed to unduly confuse or handicap a State witness called to identify the accused. Thus the court was under no obligation to seat several Negroes of defendant's approximate age and configuration alongside defendant in anticipation of a state identification witness being called to identify defendant.

The end result of our rulings on this subject is that the trial judge, within statutory guidelines, is to be accorded a wide discretion in the conduct of the trial with due regard to the facts and circumstances of each case. There are times in the trial of cases when the conduct of the accused, counsel and the witnesses must be regulated to preserve and maintain order, often a delicate and demanding undertaking. A trial is not, and should not be, a display of theatrics or tactics of counsel or the accused. It is, and should be, a decorous, orderly and fair search for truth, to the end that justice is served. The judgment on maintaining these standards is best left, in the first instance, to the trial judge, who is present on the scene and best qualified to observe and understand the complexities of the whole trial. Since we find no abuse of discretion here we shall not set aside the rulings complained of.

As to the defense contention that a state witness violated the order of sequestration, we need only say that there is no evidence in the record to support such a claim. To the contrary, the per curiam of the trial judge concludes that "no violation in fact took place."

### Bill No. 12

■ Over objection of defense counsel, the State's attorney was allowed to interrogate the witness O'Connor concerning an armed robbery occurring on April 26, 1970, which was 5½ months after the date of the crime for which defendant was charged. The testimony was admitted to show *modus operandi*—system, motive, intent and guilty knowledge by proof of similar acts.

As we understand this bill, the subsequent offense cannot properly establish relevant evidence showing system, motive, intent and guilty knowledge for the crime charged. And, if the fact that the offense occurred after the crime charged does not make evidence of it inadmissible, the subsequent offense was too far removed in point of time to furnish relevant evidence of the crime charged.

■ The test our law provides in this situation is that when offered to show guilty knowledge, or intent, it is no ground for objection that the proffered evidence concerns offenses occurring after the offense for which the accused is being tried, provided the time interval, as in this case, does not dim the connexity. La.R.S. 15:445, 15:-446; State v. Montegut, 257 La. 665, 243 So.2d 791 (1971); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971); State v. Haddad, 221 La. 337, 59 So.2d 411 (1952); State v. Wilde, 214 La. 453, 38 So.2d 72

(1948); State v. Keife, 165 La. 47, 115 So. 363 (1928) and State v. Jackson, 163 La. 33, 111 So. 486 (1927). Cf. State v. Hills, 259 La. 436, 250 So.2d 394 (1971). This bill lacks merit.

### Bill No. 13

■ Just prior to making his opening statement, the assistant district attorney handed defense counsel a written statement advising that the State intended to use a confession or inculpatory statement made by the defendant. Objection was made that the information was not imparted to defense counsel in time to permit him to prepare his defense to a purported voluntary confession or inculpatory statement. For soon thereafter the assistant district attorney began his opening statement which led to the commencement of the trial, all of which occupied defense counsel's time so that he could not prepare a defense to the confession or inculpatory statement. He argues, also, that the written advice handed to defense counsel should have instead been handed to the accused to comply strictly with Article 768 of the Code of Criminal Procedure, which provides:

If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.

Considering the fact that the written advice was handed to defense counsel in open court in the presence of the defendant prior to the opening statement, there is a compliance with Article 768 and the bill is without merit. Defense counsel had ample opportunity to obtain production of the written confession far in advance of trial. State v. Square, 257 La. 743, 244 So.2d 200 (1971); State v. Anderson, 254 La. 1107, 229 So.2d 329 (1969).

### Bill No. 15

■ This bill involves the court ruling that a confession given by the defendant to the officers who arrested him was free and voluntary. After hearing the evidence the trial judge stated that he did not believe defendant's testimony that the officer who received his confession promised he would have the charge for which he was tried nolle prossed. The matter resolves itself into a contest between the defendant and his brother and the police officers. The trial judge believed the latter. After reviewing the testimony on the voluntariness issue we agree the finding by the trial judge is supported by the record and we uphold the ruling.

■ It is a rule of long standing in this State that the ruling of a trial judge upon the admissibility of a confession based upon his conclusion that such confession was not obtained by threats or promises where there is a conflict of testimony will not be disturbed by this Court unless clearly not supported by the evidence. State v. Johnson, 249 La. 950, 192 So.2d 135 (1966); State v. Hughes, 244 La. 774, 154 So.2d 395 (1963); State v. Bueche, 243 La. 160, 142 So.2d 381 (1962).

### Bill No. 16

■ Counsel for the defense sought to question R. Gray Sexton, Esquire, counsel for the state witness, Charles Riley. At this time a motion for a new trial, which was then pending, had been filed by Sexton on behalf of his client Charles Riley. Riley had previously been charged, tried and convicted of attempted armed robbery, the charge growing out of the same fact situation which formed the basis for the prosecution of the defendant in the case at bar.

Attorney Sexton claimed the attorney-client privilege, saying that his client had instructed him not to testify, and the court upheld his refusal to testify. "No legal adviser is permitted," under the mandate of Section 475 of Title 15 of the Revised Statutes, "whether during or after the termination of his employment as such, unless with his client's express consent, to disclose any communication made to him as such legal adviser by or on behalf of his client, or any advice given by him to his client, or any information that he may have gotten by reason of his being such legal adviser." This bill has no merit.

*Bill No. 18*

■ This bill discloses that defense counsel objected to the court's charge relative to the responsive verdicts which were permissible under the charge of attempted robbery. The charge is not part of the bill, but the bill does disclose that when the objection was lodged the court stated: "Gentlemen, you are charged under Article 814 of the Code of Criminal Procedure, the permissible verdicts according to Louisiana law for the crime of attempted armed robbery are as follows: Guilty; Guilty of attempted simple robbery; and Not Guilty. Mr. Schroder (defense counsel) your objection is overruled."

Without knowing the content of the judge's first charge on responsive verdicts, we are unable to decide upon its correctness. We do know, however, that the quoted charge is correct and proper under Article 814 of the Code of Criminal Procedure. Therefore, assuming there was error in the charge as initially given, the error was corrected by the proper charge given in response to the defense objection. There is no merit to this bill.

The conviction and sentence are affirmed.

BARHAM, J., concurs for reasons assigned by DIXON, J.

TATE, Justice (concurring).

The writer concurs in the result reached by the majority.

With regard to Bill of Exception No. 12, the writer feels that the testimony of another armed robbery occurring five and one-half months after the date of the present crime could not have been admissible, if introduced in the presence of the jury; however, as introduced here (see Tr. 40), outside the presence of the jury, Tr. 40, (in connection with testimony as to the admissibility of results of an interrogation), the admission of such testimony did not constitute error. I thus subscribe to Justice Dixon's concurring opinion as to this issue.

The writer has more serious reservations as to the majority's disposition of Bills Nos. 4 and 5. These were taken to the trial court's refusal to have other black men sit with the accused at the counsel table, or else to permit the accused to sit in another part of the courtroom.

The reason for this request was the previously shaky identification of Chapman, the only eyewitness. Counsel notes that the identification procedures were impermissibly suggestive, for the witness Chapman was asked to identify the robber, where the accused was the only black man sitting with counsel at the place at which defendants in criminal proceedings are customarily found.

The majority correctly points out that the trial court is empowered, under certain circumstances, to permit such relief as here

requested, which might be regarded as reasonable under the particular facts of the case. The trial court, in denying this request, gave no practical reason except that it might tend to confuse the jury and not the identifying witness. I agree with the majority, that, on the record before us, no abuse of discretion is shown; but I also feel a close question is presented as to whether the identification procedure here utilized might have been impermissibly suggestive, as giving rise to a very substantial likelihood of irreparably mistaken designation of the accused as the perpetrator of the crime.

The writer respectfully concurs.

DIXON, Justice (concurring).

I concur in the result reached by the majority, but only because Bill of Exceptions No. 12 was reserved while the jury was not present in the courtroom. See dissent in State v. Crook, 253 La. 961, 974, 221 So.2d 473, 477.

The bill was reserved when the attorney for the State was allowed to question one witness, a detective sergeant with the East Baton Rouge Parish sheriff's office, about an armed robbery occurring some five and one-half months after the date of the crime for which the defendant was charged.

The trial judge in his per curiam to the bill stated:

"While this Court *personally* feels that the better view, in connection with the admission of testimony concerning prior or subsequent offenses, would be to exclude such testimony, as a Trial Court it is duty bound to apply the law as that Trial Court understands it. This Court understands that the proper interpretation of the case law permits such testimony as offered by the State—hence the reason for its admission in this case.

"While this Court is *personally* in basic agreement with the views expressed by Justice Barham in his dissent in State vs Crook, 253 La. 961, 221 So.2d 473 (1969), (and would even personally go so far as to rule out any reference to *any* offense except for impeachment purposes) it is ever mindful that such view is not yet that of the majority  *  *  *"

I agree with the trial judge. I still believe that this court goes too far in admitting evidence of other offenses offered under the color of proving "system" and "intent." Such evidence is admissible only when the offense charged is one of a system or when guilty knowledge and intent is an essential element of the inquiry. R.S. 15:446, State v. Bradford, 259 La. 381, 250 So.2d 375, 382 (dissent), State v. Hills, 259 La. 436, 250 So.2d 394, 401 (dissent), State v. Crook, supra (dissent).