JASPER E. JONES, Judge.
The defendant, Lawrence Krempel, was convicted on two counts of armed robbery in violation of LSA-R.S. 14:64 and was sentenced to ten years at hard labor on each count with the sentences to run concurrently. He appeals his convictions and sentences relying on three assignments of error.[1] We affirm.
Facts
At approximately 8:00 p.m. on November 6, 1981 two men entered Marlene’s Bottle Shop in Shreveport and robbed at least two customers at gunpoint. During the course of the robbery shots were fired into the ceiling of the establishment. On November 23, 1981 the chief investigator on the case, Detective George Spriggs of the Shreveport Police Department, received information implicating defendant and Thomas Castle in the robbery at Marlene’s. After further investigation of the incident Spriggs obtained arrest warrants for the suspects. The warrants were issued at approximately 2:00 p.m. on December 8, 1981 and were executed shortly thereafter. Defendant was arrested at his place of employment by Caddo Parish sheriff’s deputies' and Castle was arrested at defendant’s residence, located at 3821 Victory Drive in Shreveport, by officers from the Shreveport Police Department. Castle is defendant’s brother-in-law and at the time of his arrest was living with defendant. A pistol, which ballistics tests proved to have fired one of the shots in Marlene’s, was seized at defendant’s home during Castle’s arrest. The pistol was admitted into evidence against defendant. Defendant moved to suppress the pistol prior to trial. The motion was denied.
Assignment No. 1
By this assignment defendant contends the trial court erred in denying the motion to suppress the pistol.
The record reveals that six officers were dispatched to the Victory Drive address to arrest Castle. When they arrived at the address three officers, including Spriggs and Detective Rick Ware, went to the front door and three officers went to the back of the house to cover the rear door. The officers at the front door were admitted into the residence by someone inside. Upon entering they encountered three adults and two children. The officers stated their purpose for being at the residence and asked if Castle was there. The adults indicated they did not know where he was. At about that time Castle was apprehended by the officers in back attempting to flee out the rear door.
The officers immediately had everyone in the house gather into the living room. After everyone was in the living room an adult female, later identified as defendant's wife, left the living room and went to the bedroom to turn off a radio. Detective Ware followed her into the bedroom. After watching Mrs. Krempel turn off the radio and pick up a pack of cigarettes Ware noticed that she was looking at the bedroom closet. He stepped between her and the closet and quickly opened the closet door but saw no one inside. When he turned back around he noticed that Mrs. Krempel was looking down at the bed. Ware quickly looked under the bed where he saw nothing, and then picked up the corner of the mattress and found the pistol between the mattress and springs. He made no further search of the bedroom.
A search and seizure conducted without a warrant is presumed unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Fearn, 345 *844 So.2d 468 (La.1977); State v. Hernandez, 410 So.2d 1381 (La. 1982); State v. Knowles, 438 So.2d 648 (La.App.2d Cir. 1983). After the defendant makes an initial showing that a warrantless search occurred, the burden shifts to the state to affirmatively show that the search is justified under one of the narrow exceptions to the rule requiring a search warrant. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Chapman, 410 So.2d 689 (La. 1982); State v. Huston, 445 So.2d 67 (La.App.2d Cir.1984).
It is well settled that police officers in the course of performing their official duties are allowed to take whatever precautions are reasonably necessary to insure their safety. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Wade, 390 So.2d 1309 (La.1980); State v. Bolden, 380 So.2d 40 (La.1980). The question of what is reasonably necessary depends upon the facts and circumstances of the individual case. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The ultimate issue is whether a reasonably prudent officer would be warranted in the belief that his safety or that of others was in danger. Terry v. Ohio, supra; State v. Wade, supra.
When the circumstances so warrant, officers in the course of making a valid arrest are entitled to make a security search of the immediate premises for third persons who may present a potential threat to the officer’s safety. State v. Guiden, 399 So.2d 194 (La.1981); State v. Holley, 362 So.2d 1089 (La.1978).
As a matter of self-protection and to prevent the destruction of evidence, officers making an arrest are allowed to search the person of the arrestee and the area within his immediate control. Chimel v. California, supra; State v. Barrett, 408 So.2d 903 (La.1981); State v. Jewell, 338 So.2d 633 (La.1976).
The question presented here is whether officers may search the area within the control of a third person who is not arrested. With regard to that question we are in accord with the rule established in United States v. Simmons, 567 F.2d 314 (7th Cir. 1977) where the court held that a search for items within the area of immediate control of a third person who is present during a custodial arrest of the defendant for a recent crime in which guns were used is reasonable when an objective probability of danger to law enforcement officers exists under the circumstances. The officer’s search revealed cash under the cover on a bed and a gun in a purse, both of which were seized. This search was performed in the presence of a woman standing near the bed and purse while the defendant was being arrested by other officers at the doorway of the motel room. The court approved the admissibility of the seized items holding the officers were justified in believing a gun might be present and the woman might use it against them.
Detective Ware seized the gun from a bed within two to three feet of Mrs. Krempel after she cast a furtive glance at the location of the weapon. She was in the residence where her brother had just been arrested for participation in an armed robbery in which guns had not only been used but shots had been fired. Detective Ware believed Castle had just been arrested at the time he went into the bedroom with Mrs. Krempel but he was not certain of this fact. Detective Ware also was aware that Krempel was probably not at home but he also was not certain of this fact. He knew that the possible presence in the area by either Castle or Krempel and those in sympathy with them created danger to him and his fellow officers if a weapon was in the area where it could be obtained by such persons and used to endanger the officers in the performance of their duty.
The gun was clearly within the area of Mrs. Krempel’s immediate control and she was present during the custodial arrest of her brother.[2] The nature of the offense *845 which led to the arrest in this case establishes an objective probability of extreme danger in the arrest of the suspects. This objective probability was further established when Castle’s companions denied knowledge of his whereabouts while he attempted to escape through a rear door.
The only factor militating against the application of Simmons is that there the arrest occurred a very short time after the armed robbery, where here the delay between the commission of the crime and the arrest was from November 6 to December 8. However, under the circumstances of this case we find the time of the offense to be recent enough to warrant the search. In reaching this conclusion we. are influenced by the facts that the arrest occurred in the home of defendant and the arrestee, Castle, which was the most probable location for their weapons and the nature of the crime committed which establishes that the apprehension of these suspects was an undertaking of extreme danger.
We hold the circumstances of this case establish that the search which produced the gun was reasonable for the protection of the officers while they performed their duty of arresting Castle pursuant to the warrant. The trial judge committed no error when he admitted it into evidence.
This assignment of error lacks merit.
Assignment No. 8
By this assignment defendant contends the trial court erred in refusing to grant his motion for a recess made at the close of defendant’s case. The reason he requested the recess was to allow him to present the alibi testimony of his sister, Alice Showns, who was in route to Shreveport from her home in Baltimore, Maryland. The record indicates that Mrs. Showns was expected to testify that she saw defendant at home at about the time the robberies at Marlene’s were committed and that her husband, from whom she was separated, committed the robberies and framed defendant. Defendant requested that the recess be granted until Mrs. Showns was available to testify-
On the day the robberies were committed, November 6, 1981, Mrs. Showns and her husband lived next door to defendant. The trial commenced Monday, February 14, 1983. Examination of defendant’s final witness concluded at approximately 4:00 p.m. on February 17, 1983. At that time defense counsel moved for the recess. In connection with the motion counsel stated he was not made aware that Mrs. Showns was a witness until she called him on Wednesday or Thursday of the previous week. Counsel explained to the trial judge that he had not requested an out of state subpoena for Mrs. Showns because of the late date.[3] Counsel also informed the court that he was contacted by Mrs. Showns the previous day (February 16) and she had informed him she was leaving Baltimore that day and she expected to be in Shreveport sometimes late on February 17 or early February 18. Counsel further indicated that he did not know whether Mrs. Showns in fact left Baltimore, nor when she would be in Shreveport. The trial court refused to grant the recess on the basis that counsel was unable to provide a definite time for Mrs. Showns’ arrival.
A motion for a recess is evaluated by the same standards as a motion for continuance. State v. White, 389 So.2d 1300 (La.1980). Those standards are contained in LSA-C.Cr.P. art. 709 which provides:
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity *846 for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
The decision of whether to grant a recess is within the trial court’s discretion and that decision will not be reversed on appeal absent a showing of abuse of discretion. State v. Telford, 384 So.2d 347 (La. 1980); State v. Charles, 350 So.2d 595 (La. 1977).
We find no abuse of discretion in the trial court’s refusal to grant the recess. Defendant requested the recess until Mrs. Showns was available to testify but was unable to give a time when she would be available. It would have placed an undue burden on all those involved in the trial to hold it open indefinitely until she was available. We further note that the record indicates that defendant failed to use due diligence in attempting to procure Mrs. Showns’ presence for trial. The substance of her testimony could reasonably have been discovered long before the trial which was held over 14 months after defendant’s arrest.
This assignment of error lacks merit.
Assignment No. 7
Through this assignment of error appellant complains of the district judge’s denial of his motion for new trial upon grounds of newly discovered evidence. The new evidence upon which this motion is based is the testimony of Mrs. Showns. Appellant concedes that the evidence was discovered shortly prior to trial but contends that he should not be barred by the rule that new evidence must not only be newly discovered but also not discernible by reasonable diligence before the verdict, State v. Motton, 395 So.2d 1337 (La.1981), because the trial judge denied his motion to recess thereby preventing him from presenting the evidence.
A motion for new trial founded upon allegedly newly discovered evidence should be viewed with extreme caution. State v. Jefferson, 305 So.2d 465 (La.1974); State v. Jackson, 253 La. 205, 217 So.2d 372 (1968).
In order for the motion for new trial to be meritorious the evidence must not only be newly discovered but the new evidence must also be such that it would probably have changed the verdict of guilty; the test is whether the evidence is such that it ought to produce a different result. State v. Reed, 378 So.2d 923 (La. 1979).
The trial judge’s ruling on a motion for new trial based on new evidence will not be disturbed on appeal in absence of a clear showing of an abuse of discretion. State v. Robinson, 337 So.2d 1168 (La.1976); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
The new evidence is alibi testimony by Mrs. Showns. The substance of this testimony is that on the night of the robbery Mrs. Showns and Mrs. Krempel heard an announcement on television about the robbery, including a description of the car used by the robbers, that was similar to the Showns’ auto. Mrs. Showns and Mrs. Krempel then rushed next door and awoke the defendant to discuss the bulletin with him.
It is obvious that Krempel should have known from the beginning of this prosecution that Mrs. Showns was a witness. Considering that knowledge by defendant himself, any application of the slightest degree of diligence should have resulted in full discovery of the “new evidence” long before the trial. Under these circumstances the evidence sought to be offered is not newly discovered so as to support a motion for new trial. State v. Motton, supra. Further, the circumstances indicate that the evidence should have been discovered long in advance of trial and the denial of the motion to recess in no way excuses the failure of the defense to act to *847 obtain the presence of Mrs. Showns as a witness far in advance of the trial.
The motion for new trial was properly rejected upon grounds that the evidence should have been discovered before trial. State v. Reed, supra.
We also observe that the evidence sought to be presented would be partially of a cumulative nature and all subject to impeachment and that it is not such that it ought to produce a different result.
This assignment of error is without merit.
Defendant’s convictions and sentences are affirmed.

. In his formal assignments of error filed with the trial court defendant assigned nine errors. In brief he expressly abandons all but three of the assignments.

. While the search did not occur in the room in which Mrs. Krempel was located when the arrest occurred we do not find this to render Simmons inapplicable. Mrs. Krempel’s move *845 ment to the other room was voluntary and in no way constituted an effort by the officers to "set up” a search of that room. An officer may search the area under an arrestee’s control when he voluntarily requests to go to another room in a residence after his arrest. Watkins v. United States, 564 F.2d 201 (6th Cir.1977); United States v. Mason, 523 F.2d 1122 (D.C.Cir. 1975).

. The court had issued an instanter subpoena on February 15, 1983 to be served on Mrs. Showns when she arrived in Louisiana.